No. 24-5493/24-5691

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_In re: National Football League's Sunday Ticket Antitrust Litigation_,

NINTH INNING, INC._, et al.,_
_Plaintiffs-Appellants_,

v.

NATIONAL FOOTBALL LEAGUE, INC., et al.,
_Defendants-Appellees._

On Appeal from the United States District
Court for the Central District of California
(Case No. 2:15-ML-2668-PSG-SK) (Judge Philip S. Gutierrez)

## BRIEF OF WASHINGTON LEGAL FOUNDATION AS AMICUS CURIAE IN SUPPORT OF DEFENDANTS-APPELLEES

Cory Andrews
Zac Morgan
  _Counsel of Record_
WASHINGTON LEGAL FOUNDATION
2009 Massachusetts Ave. NW
Washington, DC 20036
(202) 588-0302
zmorgan@wlf.org

June 17, 2025

## RULE 26.1 DISCLOSURE STATEMENT

The Washington Legal Foundation has no parent company, issues no stock, and no publicly held company owns a 10 percent or greater interest in it.

# TABLE OF CONTENTS

Rule 26.1 Disclosure Statement .................................................................. ii

Table of Contents ...................................................................................... iii

Table of Authorities ................................................................................. iv

Interest of Amicus Curiae......................................................................... 1

Introduction and Summary of Argument................................................. 2

Argument ................................................................................................... 3

I.    THE DISTRICT COURT'S SELF-CORRECTION OF ITS OWN GATEKEEPING FAILURE WAS THE RIGHT CALL .................................. 3

II.   REVERSAL WILL CHILL SELF-CORRECTION BY THE DISTRICT COURTS, FORCING THIS COURT TO HANDLE CLEAN-UP AT A REMOVE AND ON A DELAY ................................................................. 7

    A. Rule 50(b) serves vital interests in judicial economy and fundamental fairness that are best served at the district court level ....................................................................................... 8

    B. Disfavoring district court Rule 50(b) use would be especially problematic given the recent re-clarification of Rule of Evidence 702 ............................................................................ 12

Conclusion................................................................................................. 15

Certificate of Compliance ....................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Campaign Legal Ctr v. Fed. Election Comm'n,*
    507 F.Supp.3d 79 (D.D.C. 2020) ..................................................... 7

*Daubert v. Merrell Dow Pharms., Inc.,*
    509 U.S. 579 (1993) ................................................................. 1, 7

*Gen. Elec. Co. v. Joiner,*
    522 U.S. 136 (1997) ..................................................................... 1

*In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.,*
    9 F.4th 768 (8th Cir. 2021) ........................................................ 13

*In re First All. Mortg. Co. v. Lehman Com. Paper, Inc.,*
    471 F.3d 977 (9th Cir. 2006) ....................................................... 6

*In re Johnson & Johnson Talcum Powder Prods. Mktg.,*
    *Sales Prac. & Prods. Liab. Litig.,*
    2024 WL 1914881 (D.N.J. Apr. 30, 2024) .................................... 14

*Kumho Tire Co. v. Carmichael,*
    526 U.S. 137 (1999) ................................................................. 1, 3

*Reno v. Am. Civil Liberties U.,*
    521 U.S. 844 (1997) ..................................................................... 3

*Mighty Enters., Inc. v. She Hong Indus. Co.,*
    745 Fed. App'x 706 (9th Cir. 2018) ............................................ 13

*Montgomery Ward & Co. v. Duncan,*
    311 U.S. 243 (1940) ................................................................... 11

*Neely v. Martin K. Eby Constr. Co.,*
    386 U.S. 317 (1967) ........................................................ 8, 9, 10, 11

iv

*Puga v. RCX Sols., Inc.,*
  922 F.3d 285 (5th Cir. 2019) .......................................................... 13

*Schudel v. Gen. Elec. Co.,*
  120 F.3d 991 (9th Cir. 1997) .......................................................... 9

*Steel Co. v. Citizens for a Better Env't,*
  523 U.S. 83 (1998) .......................................................... 8

*Weisgram v. Marley Co.,*
  528 U.S. 440 (2000) .......................................................... 6, 9, 10, 11

## Rules

Fed. R. Civ. P. 50 .......................................................... 7

Fed. R. Civ. P. 50(a) .......................................................... 11

Fed. R. Civ. P. 50(b) .......................................................... *passim*

Fed. R. Evid. 702 .......................................................... *passim*

Fed. R. Evid. 702, Advisory Comm. Note .......................................................... 13

## Other Sources

Mark A. Behrens and Andrew J. Trask, *Federal Rule of Evidence 702:*
  *A History and Guide to the 2023 Amendments Governing*
  *Expert Evidence,*
  23 Tex. A&M L. Rev. 43 (Fall 2024) .......................................................... 13

Lee Mickus, *Amended F.R.E. 702: One Year In, Ten Themes*
  *Emerge,*
  WLF Working Paper (Dec. 1, 2024) .......................................................... 1

Note, *Rule 50(b): Judgment Notwithstanding the Verdict,*
  58 Colum. L. Rev. 517 (1958) .......................................................... 10

Amicus Br. of WLF, *Lang v. Sig Sauer, Inc.*,
    Case Nos. 25-10810/25-10812 (11th Cir. May 22, 2025)............... 13

## INTEREST OF AMICUS CURIAE*

Washington Legal Foundation is a nonprofit, public-interest law firm and policy center with supporters nationwide. WLF promotes free enterprise, individual rights, limited government, and the rule of law. It often appears as amicus curiae in cases addressing the appropriate threshold for admitting expert evidence. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). It also regularly files amicus briefs in the antitrust context. *See, e.g., Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods, LLC,* 31 F.4th 651 (9th Cir. 2022). WLF's Legal Studies Division, the foundation's publishing arm, produces articles by outside experts on the proper reliability threshold for expert testimony. *See, e.g.,* Lee Mickus, *Amended F.R.E. 702: One Year In, Ten Themes Emerge*, WLF Working Paper (Dec. 2024), https://perma.cc/E5TU-EC4S.

As a regular participant in federal litigation, WLF shares with all parties an interest in ensuring that appellate records are properly built, complete, and lawful. Fed. R. Civ. P. 50(b).

---

* No party's counsel authored any part of this brief. No one, apart from WLF and its counsel, contributed money intended to fund the brief's preparation or submission.

1

### INTRODUCTION AND SUMMARY OF ARGUMENT

This case concerns not only the economy, but judicial economy. If Appellants ("Ninth Inning") prevail, and this Court reverses and orders reinstatement of the jury's tainted judgment below, it will send an unmistakable signal to the district courts throughout this Circuit: Hesitate, or even decline, from fixing your own mistakes, even when those errors are significant, correctable, and underpin an unjust outcome.

Consider this case. The district court mistakenly abdicated its Rule 702 gatekeeping role and ushered in unsound, unscientific testimony. Worse yet, the court realized, after the verdict was announced and the jury's calculations disclosed, that the ten-figure judgment levied against Appellees ("NFL") could be sourced only to its gatekeeping failure.

What should a court do with such gatekeeper's remorse? Here, the district court properly and promptly self-corrected, by granting the NFL's Rule 50(b) motion. Second only to getting the call right the first time, self-correction is far preferable to letting serious evidentiary errors go forth as law, only mendable months or even years later by this Court on appeal. Accordingly, the Court should decline Ninth Inning's invitation, affirm the judge's decision, and send the message to the lower courts that if they can self-correct their mistakes, they must do so.

## ARGUMENT

## I. THE DISTRICT COURT'S SELF-CORRECTION OF ITS OWN GATEKEEPING FAILURE WAS THE RIGHT CALL.

Rule 702 provides district courts, both before trial and after a jury verdict, with the "discretion to choose among reasonable means of excluding expertise that is *fausse* and science that is junky." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 159 (Scalia, J., concurring op.) (emphasis omitted). This discretion is often analogized to a "gatekeeping obligation," *id.* at 147 (majority op.), and is perhaps best thought of as the gatekeeping of a bouncer or door person. The role of a bouncer at a bar is, in part, to screen patrons to ensure that their admission to the establishment is lawful. *See Reno v. Am. Civil Liberties U.*, 521 U.S. 844, 890 (1997) (O'Connor, J., concurring op.) (". . . much like a bouncer checks a person's driver's license before admitting him to a nightclub"). Where the bouncer harmfully errs (perhaps by being misled by a false identity card or failing to rigorously check proffered evidence of age), rather than continue the error—risking the business license of his employer to a dramshop violation—the bouncer ought to ferret out and expel the underage drinker from the premises, even at some inconvenience to other patrons.

3

So it was below. Having discovered that the court had harmfully admitted speculative and unreliable testimony, Judge Gutierrez cleansed it from the record, found nothing left in the case that could support the jury's nearly-five-billion-dollar damages award, and used Rule 50(b) to order judgment as a matter of law. Messy, yes—but proper.

Before trial, the NFL sought to block the testimony of two key witnesses: Dr. Douglas Zona and Dr. Daniel Rascher. The court declined to do so. Post-trial, the court realized that admitting their testimony was a critical mistake. Far from the sufficiently reliable econometrics that the court believed it was bringing before the jury, "Dr. Rascher's testimony relied on a college football model that was developed based on speculation and *ipse dixit* opinion," while Dr. Zona's "models irrationally predicted that consumers would pay higher prices from an alternative distributor of Sunday Ticket instead of purchasing from DirecTV" and "failed to define an assumption that was necessary for evaluating the rationality and reliability of his models by never deciding what a 'direct-to-consumer' product entailed." 1-ER-17-19. The trial itself, then, served as "proponent['s]" failure to "demonstrate[] to the court that it [was] more likely than not" that the two experts' testimony fit within Rule 702's

comprehensibility, sufficiency, and reliability requirements. Fed. R. Evid. 702; 1-ER-16 ("After review of Dr. Rascher's testimony, the Court finds that his college but-for world was not based on a reliable methodology . . . and must be excluded"); *id*. at 19 (reviewing "Dr. Zona's testimony" and concluding "the flaws in his models" meant that "the [c]ourt cannot determine whether the but-for worlds without exclusivity were modeled reliably").

Nor was this outcome harmless. The underage patron was not only served, but he was also drunkenly ruining the night for the bar's other customers. As the court concluded, "without Dr. Rascher's and Dr. Zona's testimonies, it is impossible for a jury to determine on a class-wide basis that Sunday Ticket subscribers would have indeed paid less in the absence of Defendants' anticompetitive conduct." 1-ER-20. Thus, Ninth Inning "failed to provide evidence from which a reasonable jury could make a finding of injury and an award of actual damages that would not be erroneous as a matter of law, be totally unfounded[,] and/or be purely speculative." *Id*. Indeed, the court determined that was precisely what the jury did. It was "clear, without speculation, that the award was based on

improperly considered evidence" and, as a result, "nonsensical." *Id*. at 22-24.

Hit with a $4.7 billion "nonsensical" judgment, *id*. at 24, the NFL moved for judgment as a matter of law. Judge Gutierrez's responsibilities at this point were clear. He was "to inquire whether there was any legally sufficient evidentiary basis for a reasonable jury to find for [the opponent of the motion]," with the (obvious) caveat that "[i]nadmissible evidence contributes nothing to a legally sufficient evidentiary basis." *Weisgram v. Marley Co.*, 528 U.S. 440, 453-54 (2000) (first brackets in original, internal quotation marks and citation omitted). That's precisely what he did. Simply put, the bouncer had to step in.

The NFL's Rule 50(b) motion was properly granted and the jury's "guesswork" verdict, dependent "on inputs not tied to the record," was set aside. 1-ER-24 (internal quotation marks and citation omitted); *In re First All. Mortg. Co. v. Lehman Com. Paper, Inc.*, 471 F.3d 977, 1001-03 (9th Cir. 2006) (finding that "the award was based on *improperly considered* evidence, directly traceable to an error that was cured too little, too late" and remanding for further proceedings) (emphasis in original).

In undoing the jury's work, the district court acted precisely as *Daubert* itself anticipated. *Daubert*, 509 U.S. at 596 ("Additionally, in the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free to direct a judgment") (citing Fed. R. Civ. P. 50 and collecting cases). Facing a legally invalid multi-billion-dollar verdict built on its own abdication, the district court owned its mistake and corrected it, "heeding Alexander Pope's dictum that admitting error simply means that one is wiser today than one was yesterday." *Campaign Legal Ctr. v. Fed. Election Comm'n.*, 507 F.Supp.3d 79, 80-81 (D.D.C. 2020). Overriding the district court for taking the path expressly provided by the Supreme Court and the Federal Rules would be an unjust outcome—and one which will likely have serious second-order effects.

## II. REVERSAL WILL CHILL SELF-CORRECTION BY THE DISTRICT COURTS, FORCING THIS COURT TO HANDLE CLEAN-UP AT A REMOVE AND ON A DELAY.

A district court's evidentiary gatekeeping role exists not merely for the benefit of trial, but also for the courts of appeals. District courts must determine what evidence is admitted, the jury must hear the admissible

7

evidence, and after the verdict is delivered, the loser can take an appeal-of-right over the outcome and the record. This orderly process is distorted once a court fails to bounce unsound-yet-convincing evidence from reaching the ears of the jury. Just as "[h]ypothetical jurisdiction produces nothing more than a hypothetical judgment," improper evidence can and will produce improper jury verdicts. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998). The adage holds true for the courtroom as for computers: "garbage-in, garbage-out."

## A. Rule 50(b) serves vital interests in judicial economy and fundamental fairness that are best served at the district court level.

Federal Rule of Civil Procedure 50(b) offers district courts a mop to clean up a garbage spill. If this Court adopts Ninth Inning's position, however, it will send an unmistakable message to the district courts: keep the Rule 50(b) mop in the closet and let slide errors of lax gatekeeping. This outcome would bypass the usual regard accorded district courts on account of "the trial judge's firsthand knowledge of witnesses, testimony, and issues—because of his 'feel' for the overall case." *Neely v. Martin K. Eby Constr. Co.*, 386 U.S. 317, 325 (1967).

8

As Justice Black archly observed in dissenting from the *Neely*'s ruling that an appellate court *alone* may properly direct a verdict and order a district court to dismiss an action, "[a]ppellate tribunals are not equipped to try," or to test, "factual issues as trial courts are." *Id.* at 337 (Black, J., dissenting). Having tried the case to verdict, the district judge "has a vast store of information and knowledge about it that the appellate court cannot get from a cold, printed record." *Id.*

This Circuit briefly barred district courts from "excising . . . previously admitted testimony," *Schudel v. Gen. Elec. Co.*, 120 F.3d 991, 995 (9th Cir. 1997), en route to "instruct[ing] the entry of judgment as a matter of law for defendant[s]," even when it was plain that "[s]horn of the erroneously admitted expert testimony, the record evidence [wa]s insufficient to justify a plaintiff's verdict." *Weisgram*, 528 U.S. at 443. The Supreme Court undid the *Schudel* rule in *Weisgram v. Marley Co.*, 528 U.S. at 453-56 (citing *Schudel*), when it held that an *appellate* court could do so. *Id.* at 457. *Weisgram*'s rule won out for two good and sufficient reasons, which are only amplified when a district court, not an appellate body, delivers on a Rule 50(b) motion. Affirmance here will reinforce those

equities, while reversal will send the opposite signal, functionally a soft re-*Schundel*ing of district court authority.

First, bog-standard judicial economy. A principal "'purpose of Rule 50 [is] to speed litigation and to avoid unnecessary retrials.'" *Weisgram*, 528 U.S. at 451 (quoting *Neely*, 386 U.S. at 326); *see also* Note, *Rule 50(b): Judgment Notwithstanding the Verdict*, 58 Colum. L. Rev. 517, 530 (1958) (Rule 50(b) exists to "speed litigation" and for "avoidance of needless retrials"). This is particularly relevant when a district court is making the call.

Take this case. Judge Gutierrez neatly set the table for this Court. The entire trial process, as well as the district judge's disagreement with its output, is properly and squarely for review. By contrast, if Judge Gutierrez had declined to self-correct, this Court would not have the benefit of the trial court's comprehensive analysis of why it believed Dr. Zona and Dr. Rascher's testimony was so fatal to the jury's judgment.

And while the court below was not wrong to do so, Rule 50(b) also reduces judicial friction in those rare circumstances when a district court is too aggressive in striking testimony and directing a judgment. When a district court inappropriately sets aside a verdict, this Court need not

10

expend more time and resources below by ordering a retrial, with the attendant risk that the subsequent outcome will, once again, land itself on the docket of the Court of Appeals. Instead, it may simply reinstate the jury's decision and preserve judicial economy.

In this way, *contra* the allegations of Amicus American Antitrust Institute, Rule 50(b) *preserves* critical Seventh Amendment interests because this Court reviews both the judge's order and the jury's verdict. *See* Amicus Br. of Am. Antitrust Inst. at 16-20. Had Judge Gutierrez granted a Rule 50*(a)* motion and directed the outcome without benefit of a completed trial record, the jury process might have been disrespected. *Neely*, 386 U.S. at 321 ("And it is settled that Rule 50(b) does not violate the Seventh Amendment's guarantee of a jury trial") (citing *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243 (1940)). But that is not this case.

Second, there's fundamental fairness. *Weisgram* determined that, notwithstanding due deference to a jury verdict or the prior admission of evidence, "fairness concerns should loom as large when the verdict winner . . . failed to present sufficient evidence as when . . . inadmissible record evidence [is] essential to the verdict winner's case." *Weisgram*, 528 U.S. at 454. If district courts are advised to let gatekeeping failures slide, it will

11

inevitably lead to unjust verdicts surviving when they ought to have been dispatched.

In short, not only would reversal risk distorted records on appeal and an unnecessary cluttering of the appellate docket, but it would also mean that error correction will be done only at a remove and on a delay. And even that suboptimal outcome assumes that wronged parties will make it upstairs to this Court in the first place. Not every actor can afford to take their appeal-of-right, and others may choose to eat the cost of an unjust verdict rather than submit to additional protracted litigation.

### B. Disfavoring district court Rule 50(b) use would be especially problematic given the recent re-clarification of Rule of Evidence 702.

Not only is Fed. R. Civ. P. 50(b) generally a useful tool for district courts, but it also is a *particularly* useful tool for the here-and-now, as courts grapple with the aftermath of the 2023 amendments to Fed. R. Evid. 702. While the meaning of Rule 702 has been fixed since the *Daubert* trilogy of cases and the Rule's consequent 2000 amendments, the message that district courts must aggressively exclude junk expertise from the courtroom had not fully resonated with the judiciary. "For example, opinions from the U.S. Courts of Appeals for the Fifth, Eighth, and Ninth

Circuits discarded Rule 702(b)'s directive that admissible opinion testimony must have sufficient factual support." Mark A. Behrens and Andrew J. Trask, *Federal Rule of Evidence 702: A History and Guide to the 2023 Amendments Governing Expert Evidence*, 12 Tex. A&M L. Rev. 43, 50 (Fall 2024) (citing, *e.g.*, *Puga v. RCX Sols., Inc.*, 922 F.3d 285 (5th Cir. 2019); *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 9 F.4th 768, 786 (8th Cir. 2021); *Mighty Enters., Inc. v. She Hong Indus. Co.*, 745 Fed. App'x 706, 709 (9th Cir. 2018)).

So in 2023, the Rule had to be amended yet again to "clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not the proffered testimony meets the admissibility requirements." Fed. R. Evid. 702, Advisory Comm. Note. The recency of this clarifying gloss, however, means that there are complicated and ongoing cases—not just in the antitrust context, but shot through dockets of the district courts—where early evidentiary motions may have been unwisely granted via a mistaken pre-2023 understanding of the Rule's dictates. *See* Amicus Br. of WLF, *Lang v. Sig Sauer, Inc.*, Case Nos. 25-10810/25-10812 (11th Cir. May 22, 2025) (urging reversal where a district court inappropriately admitted

judgment-dispositive evidence in reliance on pre-2023 caselaw); *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Prac. & Prods. Liab. Litig.*, 2024 WL 1914881, at *2 (D.N.J. Apr. 30, 2024) ("The fact that Rule 702 is not a change in the law but a clarification is precisely why it would be inappropriate for this Court to preclude Defendants from challenging this Court's previous *Daubert* holdings") (emphases omitted). The district courts in this Circuit should be reassured that this Court will back them up should they choose to use Rule 50(b) to clean up mistaken evidentiary rulings that taint or compel inappropriate jury verdicts.

## CONCLUSION

This case shows the stakes. Ninth Inning obtained a ten-figure judgment on a legally insufficient basis. Should messes of that magnitude be left for the Court of Appeals? Or should the district courts, whenever possible, take advantage of their inherent closeness to the facts and evidence at hand, and sweep up?

This Court should affirm.

Respectfully submitted,

/s/ Zac Morgan
Cory Andrews
Zac Morgan
WASHINGTON LEGAL FOUNDATION
2009 Massachusetts Ave. NW
Washington, DC 20036
(202) 588-0302
zmorgan@wlf.org

June 17, 2025

15

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limits of Federal Rule of Appellate Procedure 29(a)(5) because it contains 2,851 words, excluding those parts exempted by Federal Rule of Appellate Procedure 32(f).

I also certify that this brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and (6) because it uses 14-point Century Schoolbook font.

/s/ Zac Morgan
Zac Morgan
*Counsel for Amicus Curiae*
*Washington Legal Foundation*

June 17, 2025